1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHANIE F.,[1] | Case No. 2:19-cv-03941-MAA |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER REVERSING DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS** |
| ANDREW M. SAUL,[2] Commissioner of Social Security, | |
| Defendant. | |

On May 6, 2019, Plaintiff filed a Complaint seeking review of the Social Security Commissioner's final decision denying her application for supplemental security income pursuant to Title XVI of the Social Security Act.  This matter is fully briefed and ready for decision.  For the reasons discussed below, the Commissioner's final decision is reversed, and this action is remanded for further administrative proceedings.

---

[1]  Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  The Commissioner of Social Security is substituted as the Defendant pursuant to Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

On December 19, 2014, Plaintiff filed applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, alleging disability beginning on April 15, 2008. (Administrative Record [AR] 16, 109-10.)  Plaintiff later withdrew her application for disability insurance benefits and amended her alleged disability onset date to December 19, 2014.  (AR 52.)

Now pending for review is the Commissioner's final decision denying Plaintiff's application for supplemental security income.  Plaintiff alleged disability because of "Physical problems; Narcolepsy/hypnosomnia; Migraines; Depression; [and] ADD/ocd."  (AR 125.)  After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 161-62.)  At an initial hearing held on September 29, 2017, at which Plaintiff appeared with counsel, the ALJ heard testimony from Plaintiff and a vocational expert.  (AR 49-76.)  Following this hearing, Plaintiff underwent a neurological consultative examination.  (AR 73; *see also* AR 515-26.)  Following the examination, at a supplemental hearing held on April 27, 2018, at which Plaintiff appeared with counsel, the ALJ heard testimony from a vocational expert. (AR 37-48.)

In a decision issued on May 30, 2018, the ALJ denied Plaintiff's application after making the following findings pursuant to the Commissioner's five-step evaluation.  (AR 16-31.)  Plaintiff had not engaged in substantial gainful activity since her alleged disability onset date of December 19, 2014.  (AR 20.)  She had severe impairments consisting of "degenerative disc disease of the lumbosacral spine; degenerative disc disease of the cervical spine; migraines; narcolepsy; and a history of brain tumor, status post bilateral craniotomy, which reportedly occurred in 2000."  (*Id*. [internal citations omitted.])  She did not have an impairment or combination of impairments that met or medically equaled the requirements of one

2

of the impairments from the Commissioner's Listing of Impairments.  (AR 23.)
She had a residual functional capacity for light work.  (AR 23-24.)  She was
capable of performing her past relevant work as a "Salesperson/Hearing Aids," as
both generally and actually performed.  (AR 30-31.)  Thus, the ALJ concluded that
Plaintiff was not disabled as defined by the Social Security Act.  (AR 31.)

On March 4, 2019, the Appeals Council denied Plaintiff's request for review.
(AR 1-7.)  Thus, ALJ's decision became the final decision of the Commissioner.

## DISPUTED ISSUES

The parties raise the following disputed issues:

1.      Whether the ALJ erred in finding that Plaintiff did not have a "severe"
mental impairment;

2.      Whether the ALJ erred in the assessment of the medical opinions in
the record regarding Plaintiff's work-related physical limitations;

3.      Whether the ALJ erred in rejecting Plaintiff's testimony regarding her
subjective symptoms and functional limitations; and

4.      Whether the ALJ erred in relying on the vocational expert's response
to his incomplete hypothetical question.

(ECF No. 21, Parties' Joint Stipulation ["Joint Stip."] at 3.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's final
decision to determine whether the Commissioner's findings are supported by
substantial evidence and whether the proper legal standards were applied.  *See*
*Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir.
2014).  Substantial evidence means "more than a mere scintilla" but less than a
preponderance.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Lingenfelter*
*v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).  Substantial evidence is "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The Court must review the record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion.  *Lingenfelter*, 504 F.3d at 1035.  Where evidence is susceptible of more than one rational interpretation, the Commissioner's interpretation must be upheld.  *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).

## DISCUSSION

For the reasons discussed below, reversal and remand for further administrative proceedings are warranted for Issue Three, based on the ALJ's assessment of Plaintiff's subjective symptom testimony.  Thus, the Court declines to address Plaintiff's remaining arguments.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## I.     Subjective Symptom Testimony.

### A.     Legal Standard.

An ALJ must make two findings in assessing a claimant's pain or symptom testimony.  SSR 16-3P, 2017 WL 5180304, at *3; *Treichler*, 775 F.3d at 1102. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler*, 775 F.3d at 1102 (citation omitted). "Second, if the claimant has produced that evidence, and the ALJ

has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015).

"A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (*en banc*)).

Beginning on March 28, 2016, SSR 16-3P rescinded and superseded the Commissioner's prior rulings as to how the Commissioner will evaluate a claimant's statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. *See* SSR 16-3P, 2017 WL 5180304, at *1. Because the ALJ's decision in this case was issued on May 30, 2018, it is governed by SSR 16-3P. *See id.* at *13 and n.27. In pertinent part, SSR 16-3P eliminated the use of the term "credibility" and clarified that the Commissioner's subjective symptom evaluation "is not an examination of an individual's character." SSR 16-3P, 2017 WL 5180304, at *2; *see also Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). These changes are largely stylistic and are consistent in substance with Ninth Circuit precedent that existed before the effective date of SSR16-3P. *See Trevizo*, 871 F.3d at 678 n.5.

**B.   Background.**

At the initial administrative hearing in September 2017, Plaintiff testified about her condition as follows:

///

She had brain surgery in 2000.  (AR 58.)  She has narcolepsy, which has gotten gradually worse and causes her to sleep "an incredible amount of hours." (AR 59.)  She also has cataplexy, which causes her to fall down more than once a per week, on average.  (AR 59-60.)  When she falls down, it might take her 10 seconds up to one hour to recover.  (AR 60-61.)  She also has migraine headaches once per week.  (AR 61.)  The narcolepsy and cataplexy are the reason she cannot work.  (*Id.*)

Her medications include Hydrocodone, migraine medications, and Provigil. (AR 61, 63.)  Her doctors want her to take another medication, but she cannot afford it because her insurance, Medi-Cal, does not cover it.  (AR 62.)  She did not start seeing doctors until 2014, when she obtained Medi-Cal insurance.  (AR 63.) In 2014, Plaintiff began seeing Dr. Cherik, a neurologist who prescribed Provigil for her sleeping disorder.  (AR 63.)

On a typical day, Plaintiff sleeps "most of the time 14 hours, to 24 hours." (AR 64.)  She can use the bathroom and take a bath, but she usually falls asleep in the bathtub.  (*Id.*)  She lives with a friend who takes care of her.  (*Id.*)

In addition to testifying at the initial hearing, Plaintiff completed a written "Function Report" describing her condition.  (AR 323-31.)  In pertinent part, Plaintiff described her daily activities.  She wrote that after she wakes up, she has a meal, takes her medications, takes a shower or bath, goes to the grocery store or takes a short walk, and sometimes visits the doctor.  (AR 324.)  She also wrote that her chores consisted of folding laundry, dusting, and doing dishes, but that she sometimes needs help from her friend to finish the chores.  (AR 325.)

### C.   Analysis.

The ALJ first found that Plaintiff medically determinable impairments could reasonably be expected to cause the alleged symptoms.  (AR 24.)  However, the ALJ next found that Plaintiff's statements concerning the intensity, persistence, and

limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (*Id.*)  As support, the ALJ cited three broad reasons.  (AR 24-25, 28-29.)  The Court reviews each reason in turn.

### 1.     Nature of treatment.

In assessing Plaintiff's subjective symptom testimony, the ALJ made multiple findings about the nature of Plaintiff's medical treatment.

First, the ALJ found that Plaintiff was treated with "conservative measures such as prescription medications and regular monitoring."  (AR 28.)  "[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (quoting *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995)).  "Any evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated."  *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

Plaintiff's treatment included the medications Provigil (AR 481, 482, 484, 503), Hydrocodone (AR 482-84, 503), Vicodin (AR 465), and headache medication (AR 465).  While it is unclear whether these treatments would be considered "conservative" for conditions such as narcolepsy and back pain, it is unnecessary to resolve that question.  Even assuming that such treatment was conservative, it would not be a clear and convincing reason if more extensive treatment was unaffordable.  *See Carmickle v. Commissioner, Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Orn*, 495 F.3d at 638; *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  Plaintiff testified that her Medi-Cal insurance covers Hydrocodone and migraine medications, but does not cover other medications, which she cannot afford.  (AR 62.)  The Commissioner did not contest this part of Plaintiff's testimony.  See *Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1296-97 (9th Cir. 1999) (claimant's minimal treatment was not a clear and convincing reason to discount his testimony, given his uncontested explanation

that he could not afford more treatment).  Thus, evidence of conservative treatment was not a clear and convincing basis to reject Plaintiff's subjective symptom testimony.

Second, the ALJ found that "these modest measures have yielded some (albeit allegedly not total) relief" without significant medication side effects.  (*Id*.)  In assessing a claimant's testimony, an ALJ may consider the claimant's favorable, or even fair, response to treatment.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039-40 (9th Cir. 2008) (holding that a claimant's favorable response to conservative treatment undermined the claimant's reports regarding the disabling nature of his pain); *see also Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant and a "fair response" to medication).  Substantial evidence did not show that Plaintiff's response to her medications was fair.  Rather, the record showed that, with medication, Plaintiff complained continuously about chronic headaches (AR 482, 484, 495, 499, 501, 503, 505, 513); intractable lower back pain (AR 481-84, 499, 505); constant sleeping (AR 484, 497, 499, 504), for up to 15 years per day (AR 503); and constant falling (AR 501, 508, 510, 511).  Based on this evidence, Plaintiff's response to treatment was not a clear and convincing reason to reject her Plaintiff's subjective symptom testimony.

Finally, the ALJ noted that, with regard to Plaintiff's mental impairments, she had no ongoing treatment with a mental health professional for more than a decade before the initial administrative hearing in September 2017.  (AR 29.)  An ALJ may consider a claimant's "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).  Similarly, an ALJ may discount a claimant's testimony "if the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints."  SSR 16-3P, 2017 WL 5180304, at *9.  Here, however, Plaintiff's lack of ongoing treatment with a mental health professional for more than decade before September 2017 had

limited relevance because she was not alleging disability for most of that period: she alleged disability beginning in December 2014. *See Carmickle*, 533 F.3d at 1165 (evidence predating an alleged onset date is of limited relevance). And beginning around the time of her alleged onset date in December 2014, when she had health insurance, Plaintiff did receive regular treatment, including mental health treatment that included a referral to a psychiatrist. (AR 481, 485.) And although Plaintiff's mental health treatment was not as extensive as her treatment for narcolepsy, she based her claim of disability primarily on narcolepsy. *See Mahmood v. Commissioner Social Sec. Admin.*, 61 F. Supp. 3d 982, 992 (D. Or. 2014) (claimant's failure to seek treatment for a condition that was not her primary reason for seeking disability benefits was not a clear and convincing reason). In sum, the absence of ongoing treatment with a mental health professional was not a clear and convincing reason to reject Plaintiff's subjective testimony.

### 2. Daily activities.

The ALJ stated that Plaintiff's daily activities were "not fully consistent with claims of disabling impairment." (AR 29.) In her oral testimony and written report, Plaintiff stated that she tends to her personal care needs, prepares simple meals, performs some light household chores, and shops in stores. (*Id.*; *see also* AR 64, 324, 325.)

A claimant's testimony about her daily activities may undermine her claim of disability in two ways: (1) the activities may contradict her other testimony about the severity of her symptoms, or (2) the activities may meet the threshold for transferable work skills. *See Orn*, 495 F.3d at 639. The ALJ relied on the first way, which was not clear and convincing.

Plaintiff's testimony about her daily activities did not clearly contradict her other testimony about the severity of her symptoms, because the ALJ did not clearly identify the contradiction. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th

Cir. 2014) ("[T]he ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony.") (emphasis in original); *see also Ross v. Berryhill*, 711 F. App'x 384, 386 (9th Cir. 2017) ("[T]he ALJ failed to identify specific symptom testimony the ALJ found to be inconsistent with [the claimant's] reported activities of daily living.") (citation omitted).  In any event, the Court perceives no contradiction that was clear and convincing.  Plaintiff's testimony about her activities — such as performing personal care, preparing simple meals twice a day, doing light household chores, and going to the grocery store — was not inherently contradictory of her other testimony regarding her tendency to sleep for most of the day and to fall down more than once per week.  Moreover, the purported contradiction is less convincing here because of uncontested evidence that Plaintiff received help from her roommate to perform her daily activities.  *See Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("But here, as described, the daily activities, which included completing basic chores, sometimes with the help of a friend, and attending occasional social events, do not contradict [the claimant's] testimony.").  Thus, this was not a clear and convincing reason to reject Plaintiff's subjective symptom testimony.

### 3.    Inconsistent with objective medical evidence.

The ALJ found that Plaintiff's subjective symptom allegations were not consistent with "the objective medical evidence" and gave numerous examples. (AR 24-25.)  But even if the record fully supports this reason, it still would be legally insufficient because it is the sole remaining reason for the ALJ's assessment of Plaintiff's testimony.  *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (9th Cir. 2006) (finding insufficient an ALJ's sole remaining rationale that the claimant's testimony was "not consistent with or supported by the overall medical evidence of record"); SSR 16-3P, 2017 WL 5180304, at *5 ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting

effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual."). Thus, the ALJ's assessment of Plaintiff's subjective symptom testimony cannot be upheld solely on this basis.

### D.   Conclusion.

The ALJ's decision did not state clear and convincing reasons based on substantial evidence to discount Plaintiff's subjective symptom testimony. Thus, reversal is warranted.

## II.   Remand for Further Administrative Proceedings.

Ninth Circuit case law "precludes a district court from remanding a case for an award of benefits unless certain prerequisites are met." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citations omitted). "The district court must first determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Id.* "If the court finds such an error, it must next review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been resolved." *Id.* (citation and internal quotation marks omitted).

Here, all essential factual issues have not been resolved. Thus, it is inappropriate to credit Plaintiff's testimony as true. *See Leon v. Berryhill*, 880 F.3d 1041, 1046 (9th Cir. 2017). The record raises factual conflicts about Plaintiff's level of functioning that "should be resolved through further proceedings on an open record before a proper disability determination can be made by the ALJ in the first instance." *See Brown-Hunter*, 806 F.3d at 496; *see also Treichler*, 775 F.3d at 1101 (stating that remand for an award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved") (citation omitted); *Strauss v. Commissioner of the Social Sec. Admin.*, 635 F.3d

1135, 1138 (9th Cir. 2011) (same where the existing record does not clearly demonstrate that the claimant is disabled within the meaning of the Social Security Act).

Therefore, based on its review and consideration of the entire record, the Court has concluded on balance that a remand for further administrative proceedings pursuant to sentence four of 42 U.S.C. § 405(g) is warranted here.  It is not the Court's intent to limit the scope of the remand.

## ORDER

It is ordered that Judgment be entered reversing the final decision of the Commissioner of Social Security and remanding this matter for further administrative proceedings.

DATED:  May 12, 2020

_____
MARIA A. AUDERO
UNITED STATES MAGISTRATE JUDGE